DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Maurice Johnson, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Following an investigation, Appellant was indicted for the following: one count of aggravated robbery in violation of R.C. 2911.01(A)(1), with a firearm specification; one count of aggravated burglary in violation of R.C. 2911.11(A), with a firearm specification; three counts of kidnapping in violation of R.C. 2905.01(A), with a firearm specification; and, one count of having weapons under disability in violation of R.C.2923.13(A)(2). Appellant's indictment stemmed from incidents that occurred in the early morning hours of May 28, 2004.
 {¶ 3} Gloria Williams testified that she was awakened in her bedroom in the early morning hours by a man wearing a mask and holding a gun. The man ordered her into the second-floor hallway of her Akron home. Upon entering the hallway, Ms. Williams saw a second man holding a gun to her son Justin William's head. The men demanded that Mr. Williams give them his jewelry, including his watch and diamond earrings. The men also forced Ms. Williams' daughter into the hallway during the invasion. After the men threatened to kill his sister and mother, Mr. Williams gave them his jewelry.
 {¶ 4} Ms. Williams testified that as the men were leaving, one of their masks fell and she clearly saw the intruder's face. Ms. Williams further testified that she was face-to-face with that intruder prior to him leaving and that she would never forget his eyes. Mr. Williams testified that during the invasion that same intruder's mask fell twice, and Mr. Williams recognized the man as a person nicknamed Caous.
 {¶ 5} As a result of this information being provided to the police, officers were able to correspond with the local gang unit which determined that Appellant fit the description given by both Ms. Williams and her son. Additionally, the gang unit identified another individual who used the gang name Caous. Accordingly, the police put together two photo arrays, each centered around one of the gang members named Caous. Ms. Williams did not choose any individual from the first array, but immediately chose Appellant from the second array. Mr. Williams also identified Appellant immediately when presented with the photo array.
 {¶ 6} As a result, Appellant was indicted as noted above and the matter proceeded to a jury trial after Appellant's unsuccessful attempts to suppress Ms. Williams' identification of him. During his first trial, the jury was unable to reach a verdict and a mistrial was declared. Following retrial, Appellant was convicted of aggravated robbery and aggravated burglary, each with a firearm specification. Additionally, Appellant was convicted of having weapons while under disability. Appellant was sentenced to a total of 15 years in prison. Appellant timely appealed his convictions, raising nine assignments of error. For ease of analysis, several of Appellant's assignments of error have been consolidated.
 II. ASSIGNMENT OF ERROR I
"TRIAL COURT ERRED AND DENIED [APPELLANT'S] CONSTITUTIONAL RIGHTS TO DUE PROCESS WHEN IT DID NOT SUPPRESS THE IDENTIFICATION MADE PURSUANT TO THE UNCONSTITUTIONALLY SUGGESTIVE PHOTO ARRAY[.]"
 {¶ 7} In his first assignment of error, Appellant asserts that his rights to due process were violated because his identification was the result of an unduly suggestive photo array. We disagree.
 {¶ 8} Ohio has adopted the United States Supreme Court's two-part analysis for assessing a photo array: (1) whether the identification was unnecessarily suggestive of the suspect's guilt, and (2) whether the identification was ultimately unreliable under the circumstances. See State v. Waddy (1992),63 Ohio St.3d 424, 438-39. The United States Supreme Court has set forth a standard of review:
"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."Simmons v. United States (1968), 390 U.S. 377, 384.
The Court offered the following rationale for such a high threshold:
"The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." Id.
 {¶ 9} In addition, the Ohio Supreme Court has provided the factors this Court must examine to determine the reliability of the identification.
"In order to determine the reliability of the identification, we must consider (1) the witness's opportunity to view the defendant at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification." (Citations omitted.) State v. Davis (1996), 76 Ohio St.3d 107,113.
 {¶ 10} Appellant asserts that the array was unduly suggestive because he was the only light-skinned African American in the array and Ms. Williams had described him as light-skinned. However, Appellant ignores the testimony given by Ms. Williams. Ms. Williams testified that she concentrated on the eyes of the persons in the array, and there is no indication that skin color ever played into her decision-making process. In fact, when shown a previous array that did not contain Appellant, Ms. Williams did not choose any of the six individuals pictured. Additionally, the other individuals in the array contained the same characteristics i.e., each person in the array had braids and facial hair, features identified by Ms. Williams, her son, and her daughter.
 {¶ 11} We also find that under the totality of the circumstances Ms. Williams' identification was reliable. Ms. Williams testified unequivocally that she clearly saw the intruder's face when his mask fell as he was walking down her stairs. Her immediate description of the intruder matched Appellant's description. Further, she was definite in her identification. When Detective McFarland inadvertently instructed her to sign the wrong number on the photo array, she corrected him, asserting again that she was certain that Appellant was the man who entered her house. Finally, Ms. Williams identified Appellant's photo the day following the crime. Accordingly, under the totality of the circumstances, Ms. Williams' identification was reliable. Davis, 76 Ohio St.3d at 113. The trial court, therefore, properly denied Appellant's motion to suppress. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED WHEN IT FAILED TO RENEW [APPELLANT'S] MOTION SPECIFICALLY [APPELLANT'S] MOTION TO SUPPRESS IDENTIFICATION BASED UPON FACTS DEVELOPED AT TRIAL[.]"
 {¶ 12} In his second assignment of error, Appellant argues that the trial court erred when it failed to renew his motion to suppress his identification. We disagree.
 {¶ 13} Upon review of the record, this Court can find no evidence that Appellant renewed his motion to suppress once evidence was presented at trial. Further, Appellant has offered no authority and this Court has found no authority for the proposition that the trial court must sua sponte revisit Appellant's motions.
 {¶ 14} We do note, however, that Appellant's assertions are not supported by the record. As noted above, Ms. Williams' identification was reliable. In addition, Mr. Williams testified unequivocally that he recognized Appellant's voice and his face. Mr. Williams testified that Appellant's mask fell twice during the robbery and they knew Appellant from the surrounding neighborhood. Mr. Williams identified Appellant as Caous, a name police linked to Appellant. When shown the same photo array as his mother, Mr. Williams immediately identified Appellant as the intruder. Accordingly, Appellant has provided no basis for suppressing his identification either before or during trial. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO INSTRUCT THE JURY CONCERNING EYEWITNESS TESTIMONY CONCERNING [APPELLANT] AND THUS DENIED [APPELLANT] DUE PROCESS[.]"
 ASSIGNMENT OF ERROR IV
"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO PROVIDE A JURY INSTRUCTION CONCERNING THE ADMISSIBILITY OF 404(B) TESTIMONY AND IN DOING SO DENIED [APPELLANT] A FAIR TRIAL AND CONSTITUTIONALLY GUARANTEED DUE PROCESS[.]"
 {¶ 15} In his third and fourth assignments of error, Appellant alleges that the trial court erred in regard to the instructions it gave to the jury. This Court finds that Appellant has failed to preserve any alleged error.
 {¶ 16} After giving the jury its instructions, the trial court inquired as follows:
The Court: "Now, I would at this time inquire of counsel * * * if there were any instructions to the jury that have been given incorrectly or omitted. * * * On behalf of the defense?"
Appellant's counsel: "No, Your Honor."
As this Court has previously stated in State v. Powers
(1995), 106 Ohio App.3d 696, 699:
"To preserve for appeal the issue of error in the instruction to the jury, an appellant must cite an objection to the instruction on the trial record. * * * A fundamental rule of appellate review is that a reviewing court will not consider as error any issue that a party was aware of but failed to bring to the trial court's attention. Thus, a party has waived the right to contest an issue on appeal if that issue was in existence prior to or at the time of trial and the party did not raise it at the appropriate time in the court below." (Internal citations omitted).
Accordingly, Appellant has forfeited any alleged error the trial court committed when it instructed the jury. Appellant's third and fourth assignments of error are overruled.
 ASSIGNMENT OF ERROR V
"THE TRIAL COURT DENIED [APPELLANT] DUE PROCESS AND A FAIR TRIAL WHEN IT ALLOWED TESTIMONY OF [APPELLANT'S] PRIOR CONVICTIONS DESPITE [APPELLANT'S] STIPULATION[.]"
 {¶ 17} In his fifth assignment of error, Appellant contends that the trial court erred when it permitted the State to introduce evidence of his prior convictions, despite his stipulation to those convictions. This Court disagrees.
 {¶ 18} We recognize that there are occasions in which the introduction of a defendant's prior convictions after refusing his stipulation may be an abuse of discretion. See Old Chief v.United States (1997), 519 U.S. 172. However, this Court has consistently held that "the failure to object to the admission or exclusion of evidence waives any claim of error on appeal."State v. Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 51. Moreover, failure to object to the admission of evidence at trial waives any claim of error absent plain error. Taylor at ¶ 62.
 {¶ 19} During its case in chief, the State introduced Appellant's prior convictions, informing the jury of the offenses Appellant had committed. At that time, Appellant indicated that he would stipulate to the convictions. At no time, however, did Appellant object to the State's introduction of his prior convictions. Accordingly, Appellant has waived all but plain error in the admission of his convictions. As Appellant has not asserted that the trial court committed plain error, this Court will not undertake such a review. Accordingly, Appellant's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR VI
"THE TRIAL COURT ERRED WHEN IT ALLOWED OFFICER SCHISMENOS TO TESTIFY AS AN EXPERT WITHOUT CONDUCTING A HEARING OUTSIDE THE PRESENCE OF THE JURY TO ESTABLISH A FOUNDATION[.]"
 ASSIGNMENT OF ERROR VII
"THE TRIAL COURT DENIED APPELLANT HIS CONSTITUTIONAL RIGHT OF ASSOCIATION WHEN IT ALLOWED OFFICER SCHISMENOS TO TESTIFY ABOUT HIS GANG AFFILIATION [.]"
 {¶ 20} In his sixth and seventh assignments of error, Appellant contends that the trial court erred when it permitted Officer Schismenos to testify regarding Appellant's gang affiliation. This Court disagrees.
 {¶ 21} A review of the record indicates that Appellant did not challenge Officer Schismenos' qualifications when he testified, nor did he raise his constitutional right to association in the trial court. Accordingly, on appeal Appellant may not premise error on either of these grounds. See Powers,
supra, at 699.
 {¶ 22} Within these assigned errors, however, Appellant also asserts that the introduction of his gang membership was more prejudicial than probative. We disagree.
 {¶ 23} As noted above, the trial court has discretion to determine whether evidence is relevant, and whether relevant evidence should be excluded, and this Court will only reverse the trial court's determination upon a finding of an abuse of discretion. Sage, 31 Ohio St.3d at paragraph two of the syllabus; Hymore, 9 Ohio St.2d at 128. In the instant matter, this Court cannot say that the trial court abused its discretion.
 {¶ 24} Following Appellant's motion in limine, the trial court ruled that no evidence of gang-related activity would be introduced at trial, but permitted the State to introduce evidence of Appellant's gang membership for the purposes of identification. During his testimony, Officer Schismenos referenced Appellant's gang membership in order to explain the course of his investigation. Officer Schismenos was informed that Mr. Williams had recognized the man who invaded his home and knew him by the name Caous. Officers then sought information from the local gang unit on possible suspects who had the nickname Caous. During that investigation, officers learned that a member of the Akron Wages, Appellant, went by the nickname Caous. Officer Schismenos testified that the tattoos seen on Appellant corresponded to a local gang, the Akron Wages, thus corroborating the information he had received from the gang unit. Further, since Mr. Williams' identification stemmed from his recognition of Appellant as a gang member, Officer Schismenos' testimony served to buttress Mr. Williams' identification.
 {¶ 25} At no time did Officer Schismenos testify or infer that Appellant had committed criminal activity related to his gang membership. Accordingly, the trial court did not abuse its discretion in permitting limited testimony regarding Appellant's gang membership. Appellant's seventh assignment of error is overruled.
 ASSIGNMENT OF ERROR VIII
"THE TRIAL COURT ERRED WHEN IT TOOK JUDICIAL NOTICE OF CLIMATOLOGICAL INFORMATION OVER APPELLANT'S OBJECTION AND WITHOUT A HEARING OUTSIDE THE PRESENCE OF THE JURY [.]"
 {¶ 26} In his eighth assignment of error, Appellant claims that the trial court erred when it took judicial notice of a report generated by the U.S. Naval Observatory. This Court disagrees.
 {¶ 27} A court may take judicial notice of a fact not subject to reasonable dispute that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonabl[y] be questioned." Evid.R. 201(B). The court may do so at any time during the proceeding. Evid.R. 201(F). "[P]ursuant to Evid.R. 201(C), it is clearly within the trial court's discretion to take judicial notice." Molitor v. Gaddis (Aug. 25, 1999), 5th Dist. No. CA875, at *2.
 {¶ 28} During trial, Appellant did not assert that the report generated by the U.S. Naval Observatory was inaccurate or unreliable. Each individual who testified indicated that light entered the home through windows on the second floor. It is undisputed that officers responded to a 911 call from the Williams' residence at 5:50 a.m. The report relied upon by the trial court indicated that the sun rose on the day in question at 5:58 a.m. From this evidence, the jury could draw its own conclusions as to the reliability of the eyewitness identification of Appellant. Further, in his brief, Appellant has not asserted how the trial court's decision to take judicial notice of the time that the sun rose on May 28, 2004, prejudiced his defense. Throughout trial, Appellant denied his participation in the crimes charged and attacked the validity of the eyewitnesses' identifications. The fact that the trial court took judicial notice that the sun rose after the incident occurred may have served to bolster Appellant's assertions that the jury should not rely on Ms. Williams' identification. Accordingly, this Court cannot say that the trial court abused its discretion by taking judicial notice of the report generated by the U.S. Naval Observatory. Appellant's eighth assignment of error is overruled.
 ASSIGNMENT OF ERROR IX
"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S REQUEST FOR A SUPPRESSION HEARING ON STATEMENTS AND EXPERT TESTIMONY."
 {¶ 29} In his final assignment of error, it appears that Appellant argues that the trial court should have conducted a hearing regarding the admissibility of his statements to the police.[1] This Court disagrees.
 {¶ 30} Appellant has not identified any portion of the record, nor identified any law to support his argument. See App.R. 16(A)(7). Furthermore, Loc.R. 7(F) specifically provides that "[r]eferences to the pertinent parts of the record shall be included in the * * * argument section of the brief. If a party fails to include a reference to a part of the record that is necessary to the court's review, the court may disregard the assignment of error or argument." When an appeal comes before this Court for review, "[i]t is not the function of this [C]ourt to construct a foundation for a party's claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." Kremer v. Cox (1996),114 Ohio App.3d 41, 60.
 {¶ 31} A review of the record indicates that Appellant's motion regarding suppression of his statements to police was received by the trial court prior to his mistrial and found to have no merit. Appellant provided no new information to the trial court when he refiled his motion to suppress and has provided no argument that the trial court committed reversible error when it failed to rehear his motion. Accordingly, Appellant's ninth assignment of error is overruled.
 III. {¶ 32} Appellant's nine assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Carr, J. Concur.
[1] From the text of his assignment of error, Appellant includes references to his right of confrontation, the failure to divulge evidence by the State, and prosecutorial misconduct. Appellant does not, however, expand on any of these arguments.